**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**KASHI HERNANDEZ**,
Plaintiff,

v. Case No.: __________________

**REVOLUT TECHNOLOGIES INC.**,
Defendant.
____________________________________/

## DEMAND FOR JURY TRIAL

## COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Kashi Hernandez (“Plaintiff”), appearing pro se, brings this Complaint against Defendant Revolut Technologies Inc. (“Defendant” or “Revolut”), and alleges as follows:

1. Plaintiff Kashi Hernandez, a vulnerable, non-verbal disabled United States citizen currently located abroad in transient territory (Tirance, Albania), brings this action for emergency injunctive relief, breach of contract, discrimination under Section 504 of the Rehabilitation Act, and statutory treble damages under the Electronic Fund Transfer Act (EFTA), 15 U.S.C. Section 1693 et seq., and its implementing Regulation E, 12 CFR Section 1005.11.

2. This action arises from Defendant's reckless, bad-faith deployment of structural account lockouts, arbitrary ledger cross-contamination, deceptive compliance contradictions, and the retaliatory, premature closure of Plaintiff's financial profile on October 23, 2026.

3. Defendant's sudden, total termination of Plaintiff's account profile willfully overrides and breaches its own contractually mandated offboarding schedule and notice period, which explicitly stated that Plaintiff's account would remain operational until December 21, 2026.

4. In executing this premature closure, Defendant issued an automated, systemic directive explicitly stating: 'Please be aware that any transfers made to your account from this point forward will be rejected automatically and returned to the original sender.'

5. Defendant executed this catastrophic account disruption despite receiving explicit, contemporaneous notice that its actions would automatically intercept, block, and force the rejection of Plaintiff's pending Federal Social Security Disability Insurance (SSDI) direct deposit scheduled for November 3, 2026.

6. Plaintiff is a non-verbal disabled individual traveling abroad who possesses an official, verified written-only accommodation mandate from the Social Security Administration (SSA) and a treating physician. Operating a broken, contradictory backend system that threatens to reject a non-verbal disabled citizen's essential disability survival capital while they are isolated abroad constitutes an immediate life-safety threat and an actionable violation of investigative standards under 12 CFR Section 1005.11.

7. Depriving a disabled citizen of survival capital, shelter funds, and medical access while isolated abroad constitutes an imminent life-safety harm, requiring immediate judicial intervention through emergency injunctive

relief to halt the rejection of incoming federal benefits.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 (federal question jurisdiction), as this action arises under the Electronic Fund Transfer Act, 15 U.S.C. Section 1693g, Section 1693m, and Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794.

9. This Court has supplemental jurisdiction over Plaintiff's state law breach of contract claims pursuant to 28 U.S.C. Section 1367.

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. Section 1391(b) and the forum selection provisions set forth in Defendant's consumer cardholder agreements.

## PARTIES

11. Plaintiff Kashi Hernandez is an individual, a United States citizen, and a consumer as defined under 15 U.S.C. Section 1693a(6), currently residing temporarily abroad in Tirance, Albania. Plaintiff is a qualified individual with a disability under federal law.

12. Defendant Revolut Technologies Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business at 107 Greenwich St, 20th Floor, New York, NY 10006, engaged in the business of providing electronic fund transfer services and digital banking infrastructure to consumers within the United States and internationally.

## FACTUAL ALLEGATIONS

**<u>Severe Corporate Contradictions, Notice Failures, and Systemic Account Lockout</u>**

13. Plaintiff maintained a consumer account with Defendant governed by an agreement requiring proper notice periods prior to account termination.

14. On or about October 2026, Defendant initiated an offboarding schedule for Plaintiff's account, explicitly establishing a contractually binding notice period running through December 21, 2026.

15. In direct violation of this window, Defendant executed an immediate total account closure on October 23, 2026, completely locking Plaintiff out of the customer support interface, dispute-tracking portals, and operational control of the ledger.

16. Concurrently, Defendant implemented an automated directive to reject all incoming electronic fund transfers, explicitly stating: 'Please be aware that any transfers made to your account from this point forward will be rejected automatically and returned to the original sender.'

17. Defendant implemented this closure with full knowledge that Plaintiff relies on the account to receive life-essential Federal Social Security Disability Insurance (SSDI) benefits, with the next critical deposit scheduled for November 3, 2026.

18. Defendant engaged in extreme, textually documented administrative gaslighting and complete legal notice failures. On October 25, 2026, a human support representative (Harvey) stated: 'we're no longer able to offer you our services, and we've made the decision to permanently close your account. We sent you this decision by email and in the app.' The agent explicitly confirmed that Plaintiff's upcoming November 3 SSDI payment would be automatically blocked and returned to the Social Security Administration.

19. However, Defendant's concurrent automated support ledger system flatly contradicted its own agents, confirming in writing that no such legal closure notices were ever generated or dispatched. Specifically, the interface stated: 'Because your account has never been restricted, no notification emails, in-app alerts, or physical letters regarding a restriction were ever generated or dispatched... your account is fully active [and] ready to receive your scheduled SSDI direct deposit.' To induce reliance, the system output Plaintiff's active, supposedly 'functional' backend node metadata: Account Number: 21254343475840; ACH Routing Number: 101019644; Associated Institution: Lead Bank.

20. Furthermore, the system falsely blamed a card rejection with merchant Jica Shpk for $9.44 on October 21, 2026 on a simple, user-controlled 'app toggle switch freeze,' while simultaneously masking a structural, permanent backend profile termination. This complete systemic scrambling left Plaintiff completely blinded, frozen out of operational control, and trapped abroad without any actionable means to secure incoming federal survival funds.

**Systemic Dispute Tampering, Data Contamination, and Error-Resolution Violations**

21. The sudden, premature account termination executed by Defendant represents the final escalation of an ongoing pattern of systemic dispute tampering, evidence suppression, and error-resolution violations under 12 CFR Section 1005.11 (Regulation E).

22. The Ryanair/Booking.com Cross-Contamination (Case Ref: 67994-17686-55382): On or about May 2, 2026, Plaintiff disputed an unauthorized $79.23 USD Ryanair charge. Defendant's dispute engine corrupted the file by pulling a completely separate, unrelated Booking.com transaction (dated May 3, 2026, for 23.16 EUR / $27.24 USD) directly into the Ryanair dispute container. Defendant's Complaints Analyst (Nabeel) formally admitted this structural corporate error in writing on August 22, 2026, stating: 'We have found an error in the Final Response we sent you... namely, the letter contained incorrect chargeback dispute transaction.' Despite this admission, and explicit merchant evidence from Ryanair showing they held no record of the $79.23 USD funds, Defendant denied the error-resolution claim using a blank, non-binding template labeled 'GUIDE ONLY.'

23. The Zara Home Casablanca Algorithmic Ledger Pooling (Ref: 60081-16240-94560): On June 1, 2026, Defendant's dispute engine engaged in further data corruption by pooling two separate, independent physical card authorizations (2,156.00 MAD / $238.60 USD at 11:57 AM and 848.00 MAD / $93.20 USD at 18:53 PM) into a single blanket case container. Defendant summarily denied the dispute, placing Plaintiff in an illegal catch-22 by demanding an electronic POS refund receipt from a merchant terminal that explicitly refused to issue one due to card-network processing limitations ('system is refusing the refund... because you paid by bank card'). Defendant ignored itemized physical paper receipts and photographs proving a total unconsumed, merchant-retained merchandise value of 1,057.00 MAD ($108.74 USD) consisting of two grey tank tops and one pillow.

24. The Central House Marrakech Medina Admitted Case Conflation (Booking #6697085923): Defendant's backend system committed a severe processing error by grouping a verified, won dispute of $122.47 USD with a separate $248.59 USD lodging stay extension into a single dispute container. Defendant's Chat Assistant (Athar) formally admitted this structural failure in writing, stating: 'You are entirely correct about

how these cases are grouped... Both your original Booking.com transaction... and your prepaid hotel extension... were submitted together under the same dispute case.' Defendant documented this 'Conflation Impact,' confirming that processing the merchant's rebuttal on the hotel extension caused the system to mistakenly apply a declined status to the primary file, resulting in an invalid fund reclamation clawback attempt on a verified credit.

25. The Roots and Boots / Agoda Infrastructure Failure Dispute (-$34.46 USD): Plaintiff initiated an error-resolution claim for a transaction of $34.46 processed via Agoda on September 21, 2026 regarding a total absence of contracted property services, security, and functional internet infrastructure at the 'Roots and Boots' property. System logs explicitly document absolute device network failure: 'Flybox-D01D: Connected without internet' on September 22 and September 23, 2026, for the entire duration of the stay. Plaintiff's luggage was left unsecured by the entrance due to a total absence of property staff, and the environment was subjected to undisclosed construction banging, rendering it entirely uninhabitable. Plaintiff captured clear video and audio evidence of this; however, Defendant flatly declined the dispute on October 23, 2026—the exact day of the summary backend account termination—and blocked profile access, systematically blinding Plaintiff from appealing using this primary media file.

26. The Koh Ta Kiev/Emeline De Gabriac Extortion and Admitted Ledger Error (Gross Value: $600.00 USD): On or about October 4, 2025, Plaintiff was subjected to severe logistical and physical duress on the isolated island of Koh Ta Kiev, Cambodia, by the predatory infrastructure of 'Kactus Resort.' The merchant weaponized a strict transport monopoly to trap guests on the island, intentionally failed standard online pre-authorized transactions at checkout, fabricated micro-billing overcharges, and double-billed via un-itemized screen totals under explicit threats of local physical isolation. The property operated under severe biohazardous conditions, featuring utility failures, rooms without running water or electricity, and exposure to dangerous wildlife alongside bedding covered in visible mold and fungus. Following this extorted extraction, the counterparty issued a partial, remedial credit of $80.00 USD on October 11, 2025, processed directly into Defendant's ledger with the explicit annotation: 'Apologies for the errors.' Defendant summarily closed the dispute file and refused to investigate the remaining balance of $520.00 USD under the false, bad-faith premise that peer-to-peer mechanisms are entirely exempt from Regulation E error-resolution protocols, flatly ignoring the explicit confession of transactional illegitimacy written on the face of its own master ledger.

27. The Active Hostel Bretema Dispute Tampering (-$43.01 USD): On September 20, 2026, an unauthorized charge was processed via counterparty 'Bretema' for $43.01 USD. Plaintiff timely initiated an error-resolution dispute on September 22, 2026. Primary internal system ledger logs confirm that as recently as October 25, 2026, Defendant's dispute system actively advanced the claim, stating: 'Dispute sent back to the merchant... We've reviewed the merchant's response and have decided to challenge it... This can take up to 35 days.' Despite its own system verifying a live, ongoing investigation window requiring an active account interface under 12 CFR Section 1005.11, Defendant encounters a total profile freeze and lockout. This structural conflict proves Defendant abandoned its explicit regulatory investigation timetable while misrepresenting the status of the account.

28. Systemic Abandonment of the Ventis (-$433.82 USD) and Vestiaire Collective (-$249.21 USD) Disputes: Beyond the specific cases detailed above, Plaintiff maintained additional active, un-adjudicated error-resolution disputes under Regulation E. Primary ledger entries verify that a transaction file against merchant Vestiaire Collective for $249.21 USD (submitted Oct 9, 2026) and a transaction file against merchant Ventis for $433.82 USD (submitted Oct 15, 2026) were both actively raised and awaiting formal merchant responses under established 35-to-50-day compliance timelines. By summarily terminating Plaintiff's interface access and deactivating active profiles while these major financial streams remained open, Defendant wholesale abandoned its mandatory error-resolution obligations. This pattern of freezing active billing disputes

constitutes an intentional, institutional maneuver to clear pending liabilities by stripping vulnerable consumers of regulatory recourse under 12 CFR Section 1005.11.

## COUNT I
## VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT (EFTA)
## (15 U.S.C. Section 1693f(e)(2) / 12 CFR Section 1005.11 - For Treble Damages)

29. Plaintiff realleges and incorporates paragraphs 1 through 28 as if fully set forth herein.

30. Defendant is a financial institution subject to the strict error-resolution, investigation, and tracking mandates of the EFTA and Regulation E.

31. Defendant knowingly and willfully concluded that Plaintiff's accounts were not in error when that conclusion could not reasonably be drawn from the available evidence, including Defendant's own written confessions of structural corporate errors, data cross-contamination, and explicit confessions of error posted on its own ledger text. Defendant further violated its statutory mandates by summarily cutting off profile access while the active Hostel Bretema, Ventis, and VestiaireCollective.com transaction disputes remained open, unresolved, and subject to active regulatory timetables.

32. Defendant's deployment of hard account restrictions while explicitly reassuring Plaintiff via automated tracking systems that the profile has no restrictions constitutes definitive prima facie evidence of willful bad faith under 15 U.S.C. Section 1693f(e)(2).

33. As a direct and proximate result of Defendant's willful, bad-faith violations, Plaintiff has suffered actual damages, severe logistical distress, loss of funds, and is entitled to treble damages, reasonable attorney's fees, and statutory punitive penalties.

## COUNT II
## DISCRIMINATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
## (29 U.S.C. Section 794)

34. Plaintiff realleges and incorporates paragraphs 1 through 28 as if fully set forth herein.

35. Plaintiff is a qualified individual with a disability under Section 504 of the Rehabilitation Act, being a non-verbal disabled individual with a documented written-only communication accommodation mandate.

36. Defendant receives federal financial assistance directly or indirectly through its integration with federal banking systems, payment networks, and federal benefit direct deposit programs (including SSA/SSDI processing networks through partner nodes like Lead Bank).

37. Defendant discriminated against Plaintiff on the basis of disability by shutting down all text-based, in-app support interfaces, failing to accommodate Plaintiff's non-verbal status, and systemically conditioning account accessibility on modalities that violate Plaintiff's documented medical accommodations.

38. As a direct and proximate result of Defendant's discriminatory practices, Plaintiff faces an immediate life-safety threat via the imminent rejection of vital disability capital while stranded abroad.

## COUNT III
## BREACH OF CONTRACT

39. Plaintiff realleges and incorporates paragraphs 1 through 28 as if fully set forth herein.

40. The consumer account agreement between Plaintiff and Defendant constitutes a valid, legally binding contract.

41. Defendant breached the explicit terms of this contract by summarily terminating account operations, executing an unauthorized clawback of verified funds, abandoning open active claims, and placing an automatic rejection block on incoming transfers prior to the expiration of the established December 21, 2026 notice period.

42. As a direct and proximate result of Defendant's breach, Plaintiff faces immediate financial isolation, loss of essential federal benefits, and severe consequential damages.

## COUNT IV
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

43. Plaintiff realleges and incorporates paragraphs 1 through 28 as if fully set forth herein.

44. Every contract governed by New York law contains an implied covenant of good faith and fair dealing.

45. Defendant violated this covenant by intentionally manipulating account closures, deploying textually contradictory compliance assertions, and freezing ledger access to consciously frustrate Plaintiff's right to receive life-essential federal disability benefits and valid dispute credits while fully aware of Plaintiff's vulnerable, non-verbal status abroad.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, awarding the following relief:

A. An immediate Emergency Temporary Restraining Order and Preliminary Injunction enjoining Defendant from rejecting, returning, or obstructing the incoming November 3, 2026 Federal Social Security Disability Insurance (SSDI) deposit and any associated chargeback funds;

B. An Order compelling Defendant to restore account access, unlock dispute-tracking portals, and allow the submission of primary video/audio evidence, or alternatively, force the routing of all present holdings and credits to Plaintiff's designated external Wise US Inc. destination node (Routing: 101019628; Account: 214046430211);

C. Award actual damages, statutory damages, and treble damages pursuant to 15 U.S.C. Section 1693m and 15 U.S.C. Section 1693f(e)(2);

D. Award Plaintiff reasonable attorney's fees, litigation expenses, and court costs pursuant to 15 U.S.C. Section 1693m(a)(3); and

E. Grant such other and further relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 26, 2026

Respectfully submitted,

By: ______________________________

**Kashi Hernandez, Plaintiff pro se**
Tirane, Albania

## VERIFICATION STATEMENT

I, Kashi Hernandez, declare under penalty of perjury under the laws of the United States of America that the foregoing statements and evidentiary itemizations are true, accurate, and extracted directly from primary contemporaneous system logs.

Dated: October 26, 2026

By: ______________________________

**Kashi Hernandez**